IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GOODWILL INDUSTRIES OF CENTRAL OKLAHOMA, INC., d/b/a GOODWILL CAREER PATHWAYS INSTITUTE,    Plaintiff, v. PHILADELPHIA INDEMNITY INSURANCE COMPANY,    Defendant. | No. CV-20-511-R |

**ORDER**

Before the Court is Defendant Philadelphia Indemnity Insurance Company's ("PIIC") Motion to Dismiss. Doc. No. 8. Plaintiff, Goodwill Industries of Central Oklahoma, Inc. ("Goodwill"), filed a Response to PIIC's Motion (Doc. No. 13), and PIIC filed a Reply in Support of its Motion. Doc. No. 17. The Court finds as follows.

In considering a defendant's Motion to Dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff's [Petition] contains enough "facts to state a claim to relief that is plausible on its face," and whether the factual allegations "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citations omitted).

The Court must accept all the well-pleaded allegations of the Petition as true and must construe the allegations in the light most favorable to Plaintiff. *Twombly*, 550 U.S. at

1

555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). However, the Court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cty. Bd. of Cty. Comm'rs*, 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Goodwill is a not-for-profit corporation operating in various locations throughout central Oklahoma. Doc. No. 12, p. 2. PIIC is a Delaware corporation with its principal place of business in Pennsylvania. Doc. No. 1, ¶ 3.

Goodwill purchased a Commercial Lines Policy ("the Policy") underwritten by PIIC for the "period from May 1, 2019 to May 1, 2020." Doc. No. 1-1, p. 2. The Policy provides "Business Income" coverage for "the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'" Doc. No. 1-4, p. 169. The "'suspension' must be caused by direct physical loss of or damage to property." *Id.* It provides similar coverage for "Extra Expenses" and for interruption by means of "Civil Authority." *Id.* at 169–70. The parties agree that any coverage is conditioned on Goodwill suffering a "direct physical loss of or damage to property" operated by Goodwill throughout central Oklahoma. Doc. No. 1-1, pp. 2–3.

Additionally, Goodwill alleges that "[PIIC] added an endorsement to the Policy that purports to exclude coverage for loss due to virus or bacteria." *Id.* p. 5. The endorsement is titled "Exclusion of Loss Due to Virus or Bacteria" ("Virus Endorsement"), and it "applies to all coverage under all forms and endorsements …, including … damage to buildings or personal property and … business income, extra expense, or action of civil

authority." Doc. No. 1-1, p. 100. It states that "[PIIC] will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Doc. No. 1-1, p. 100.

On March 15, 2020, the Governor of Oklahoma issued an Executive Order declaring a state of emergency as a result of the eighth case of the novel coronavirus ("COVID-19") in Oklahoma. *Id.* p. 3. Soon after, mayors in cities across central Oklahoma required the "suspension of non-essential businesses," causing Goodwill to close its locations in each respective city. *Id.*

Goodwill sought a declaratory judgment in the District Court of Cleveland County on May 6, 2020 that "[it] sustained a 'direct physical loss' and/or 'risk of direct physical loss'" from the mandated closures. Doc. No. 1-1. On June 1, 2020, PIIC removed this action from state court.

Goodwill argues that it alleged a direct physical loss because the government-mandated COVID-19 closures caused it to "sustain[] direct physical loss or damage to its property … covered by the Policy," and further, that PIIC cannot rely on the Virus Endorsement because it was added to the Policy without consideration and is therefore void. *Id.* pp. 5, 7. PIIC argues, however, that the Policy does not cover the losses resulting from the closures because Goodwill never suffered a direct physical loss, and even if it did, the Virus Endorsement excludes its recovery.[1] Doc. No. 8, pp. 12, 14.

---

[1] PIIC also alleges that the Complaint fails to meet Rule 8's pleading requirement, arguing that a Complaint must contain "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court finds that a short and plain statement was properly pled. PIIC also argues that Goodwill's "threadbare conclusions are insufficient to state a claim," Doc. No. 8, p. 10, and the Court addresses such allegations throughout its analysis of PIIC's Rule 12(b)(6) discussion, Doc. No. 8, pp. 12–20.

As discussed above, the Policy entitles Goodwill to "various forms of coverage, such as business income, extra expense, and interruption by civil authority," Doc. No. 13, p. 7, and Goodwill and PIIC agree that "[a]ll of these coverages require direct physical loss of or damage to Goodwill's property." Doc. No. 13, p. 7; Doc. No. 1-1, ¶¶ 6–11. However, "[n]either 'risk of direct physical loss' nor 'direct physical loss' is defined in the Policy," Doc. No. 1-1, ¶ 7, and the parties dispute its definition.

PIIC argues that a direct physical loss is a "demonstrable, physical *alteration* of the property," which necessarily "exclude[s] alleged losses that are intangible or incorporeal and … unaccompanied by a distinct … alteration of the property." Doc. No. 8, p. 15 (quoting 10A Couch on Ins. § 148:46) (emphasis in original). Goodwill counters that a direct physical loss results when "property is rendered unusable for its intended purpose." Doc. No. 13, p. 8 (citing *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 39 (Colo. 1968); *Matzner v. Seaco Ins. Co.*, No. CIV.A.96-0498-B, 1998 WL 566658 at *4 (Mass. Super. 1998)).

Importantly, Goodwill does not allege that COVID-19 infected its premises, but rather that its loss of income arose from the suspension of its business in compliance with the Governor's Executive Order. Doc. No. 1-1, ¶ 18. Without a definition in the policy, direct physical loss "is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions." *Bituminous Cas. Corp. v. Cowen Const., Inc.*, 55 P.3d 1030, 1033 (Okla. 2002) (citing *Phillips v. Estate of Greenfield*, 859 P.2d 1101, 1104 (Okla. 1993)).

"The interpretation of an insurance contract and whether it is ambiguous is determined by the [C]ourt as a matter of law." *Serra v. Estate of Broughton*, 364 P.3d 637,

4

641 (Okla. 2015). The Court shall not "force[ ] or constrain[ ] interpretations to create … [or] construe ambiguities." *Max True Plastering v. U.S. Fid. & Guar Co.*, 912 P.2d 861, 869 (Okla. 1996). Each party is free to contract as it wishes and is bound by the terms of the agreement. *See Bennett v. The Preferred Acc. Ins. Co. of N.Y.*, 192 F.2d 748, 751 (10th Cir. 1951) (interpreting a liability policy in Oklahoma). Further, "the Court will not undertake to rewrite … nor make … either party a better contract than the one … executed." *Bituminous*, 55 P.3d 1030 at 1033 (citing *Max True Plastering*, 912 P.2d at 869).

The Oklahoma Supreme Court has explained that "terms of an insurance policy must be considered not in a technical but in a popular sense, and … according to their . . . accepted use in common speech." *Serra*, 364 P.3d at 642 n. 6 (Okla. 2015) ((citing *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987) (quoting *Nat'l Aviation Underwriters, Inc. v. Altus Flying Serv., Inc.*, 555 F.2d 778, 782 (10th Cir. 1977))).

PIIC's proffered definition resembles the common use of the terms "direct," "physical," and "loss." The Oklahoma Supreme Court has relied on dictionary definitions to provide the common usage of terms; *see, e.g.*, *U. S. Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 757 (Okla. 1951), and Merriam-Webster defines "direct" as "proceeding from one point to another … without deviation or interruption" or as "stemming immediately from a source," implying that a causal connection must exist. Merriam Webster, https://www.merriam-webster.com/dictionary/direct (last visited Oct. 29, 2020). "Physical" is defined as "having material existence" or as "relating to material things," and a "loss" is defined as a "deprivation." Merriam Webster, https://www.merriam-webster.com/dictionary/physical (last visited Oct. 29, 2020); Merriam Webster,

5

https://www.merriam-webster.com/dictionary/loss (last visited Oct. 29, 2020). Thus, a direct physical loss results from an actual, or material, deprivation of Plaintiff's property, which closely aligns with PIIC's proffered definition explaining that the Policy only covers a "demonstrable, physical *alteration* of the property … [which] exclude[s] alleged losses that are intangible." Doc. No. 8, p. 15.

Goodwill urges the Court to adopt a more expansive definition of "direct physical loss." Doc. No. 13, p. 8. It argues that a direct physical loss includes a loss that renders "property unusable for its intended purpose." *Id.* (citing *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968)). In *Western Fire*, the Colorado Supreme Court explained that "because of the accumulation of gasoline around and under the church building[,] the premises became so infiltrated and saturated as to be uninhabitable," and thus caused a direct physical loss. *Western Fire*, 437 P.2d at 55. In two additional cases cited by Goodwill, the plaintiff alleged that a direct physical loss occurred because a physical substance entered the covered premises or somehow otherwise materially affected it. *See, e.g.*, *Travco Ins. Co. v. Ward*, 504 F. App'x 251 (4th Cir. 2013) (toxic gasses within drywall); *Matzner*, 1998 WL 566658, at *4 (carbon monoxide levels rendered building uninhabitable). Here, Goodwill did not allege that any substance entered its premises or damaged it, but only that the mandated closures rendered its premises unusable. Doc. No. 13, p. 8.

Goodwill did not allege a "direct physical loss" under the Policy because it only alleged an intangible loss to its property. Doc. No. 13, p. 8. Specifically, Goodwill alleged that "[a]s a result of this COVID-19 pandemic, Goodwill sustained direct physical loss of

6

or damage to its property and will continue to sustain direct physical loss of or damage to its property covered by the Policy….ELLIPSIS" Doc. No. 1-1, ¶ 18. As PIIC explains, Goodwill does not describe "how the spread of a communicable disease nationally caused tangible physical loss of or damage to any of [Goodwill's] premises." Doc. No. 8, p. 7.

In similar insurance coverage cases brought due to COVID-19 closures, district courts have repeatedly held that "direct physical loss" requires showing some "tangible damage." *See, e.g.*, *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020) (interpreting direct physical loss as requiring "some tangible damage to Covered Property."); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-03213-JST, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 14, 2020) ("the damage contemplated by the Policy is physical in nature") (quoting *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005)); *but see Studio 417, Inc. v. Cincinnati Ins. Co.*, No. 20-CV-03127-SRB, 2020 WL 4692385, at *6 (W.D. Mo. Aug. 12, 2020) (finding that the plaintiffs adequately alleged a direct physical loss when they stated that "COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable."). In *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581, at *1 (S.D. Fla. Aug. 26, 2020), the plaintiff had a policy providing business income and personal property insurance. The plaintiff closed its doors due to city-wide orders preventing restaurants from hosting patrons indoors, *id.*, and subsequently sought a declaratory judgment that it suffered a direct physical loss. *Id.* at 6–7. The district court held that the plaintiff's allegations were insufficient because "interruption in business must be caused by some

7

*physical problem* with the covered property," and the plaintiffs alleged only that the city-wide orders caused its closure. *Id.* at 7 (quoting *Philadelphia Parking Authority*, 385 F. Supp. 2d at 288).

This Court agrees with the other district courts' holdings, finding that at a minimum, a plaintiff must allege that a substance entered its premises or attached to its surfaces to plead a "direct physical loss." *Studio 417*, 2020 WL 4692385, at *6. The district court in *Studio 417* concluded that the plaintiffs pled a "direct physical loss" when the plaintiffs alleged that "COVID-19 … attached to and deprived [p]laintiffs of their property." *Id.* at *4. The court ultimately denied the Defendant's motion to dismiss because the plaintiffs in *Studio 417* alleged a tangible loss. *Id.* Here, however, Goodwill only states that the government's mandated closures rendered it unusable, not that COVID-19 "attached to [or] deprived [it] of [its] property." *Id.*

Alleging a direct physical loss unambiguously requires a showing of tangible damage. Goodwill failed to allege it suffered any tangible damage, and therefore, its claim is subject to dismissal.

Even if the Court applied an expansive definition of direct physical loss, as Goodwill requests, its claim is still subject to dismissal because the Virus Endorsement expressly excludes coverage. The Virus Endorsement provides that "there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Doc. No. 1-1, p. 32. By its terms, the exclusion applies because COVID-19 is a virus that "is capable of inducing physical distress, illness or disease." *Id.*

Goodwill alleges, however, that the unambiguous exclusion is inapplicable because it lacked consideration and it applies only in the event of "actual contamination" on the premises rather than "suspected contamination." Doc. No. 13, p. 18.

First, Goodwill argues that the Virus Endorsement lacks consideration. *Id.*, p. 3. It explains that "[i]t is unclear what additional facts PIIC would have liked Goodwill to plead on this issue. It is not possible, nor is it required, for Goodwill to plead facts proving a negative." *Id.* Notwithstanding whether it is "required … to … prov[e] a negative," Goodwill must plead facts that underlie its allegations. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Goodwill did not plead any facts explaining why the Virus Endorsement lacked consideration. Instead, Goodwill stated that "[a]t some point, [PIIC] added an endorsement to the Policy that purports to exclude coverage for loss due to virus or bacteria,"[2] Doc. No. 1-1, ¶ 12, followed by a legal conclusion—that "no consideration was provided to Goodwill." *Id.* The Court will not credit such conclusory allegations. *See Erikson*, 263 F.3d at 1154–55.

Goodwill additionally argues that the Virus Endorsement only applies in the event of "actual contamination" on the premises rather than "suspected contamination," Doc. No. 13, p. 18, but this argument defeats itself. First, the Virus Endorsement precludes coverage "resulting from" any virus "*capable* of inducing physical distress, illness or disease," indicating it would encompass a scenario where "suspected contamination" qualifies. Doc. No. 1-4, p. 26 (emphasis added). The mandated closures, which caused Goodwill to seek

---

[2] The Complaint does not clearly state when the endorsement was added.

9

declaratory judgment, resulted from the ability, or capability, of COVID-19 to "induc[e] physical distress, illness or disease." Thus, even if Goodwill alleged a Covered Loss, the Virus Endorsement would exclude coverage.

Other district courts have reached the same conclusion. In *Turek Enterprises, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *9 (E.D. Mich. Sept. 3, 2020), the district court held that even "assuming [p]laintiff has suffered an 'accidental direct physical loss to Covered Property,' the Virus Exclusion negates any coverage for [p]laintiff's loss of income or extra expense." The Virus Exclusion in *Turek* barred coverage for a loss caused by "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness, or disease," just like the Virus Endorsement here. *Turek*, 2020 WL 5258484, at *8.

Here, "the plain, unambiguous meaning of the Virus [Endorsement] … [also] negates coverage." *Turek*, 2020 WL 5258484, at *9. Therefore, COVID-19 clearly qualifies as a "virus" that caused Goodwill to close its doors, which bars coverage under the Virus Endorsement.

PIIC also argues that under *Katz v. Gerardi*, 655 F.3d 1212 (10th Cir. 2011), Goodwill is attempting to utilize improper claim-splitting. Doc. No. 8, p. 19. PIIC alleges Goodwill is seeking a declaration that it suffered a covered loss and if it is successful, that it will pursue a second action to determine the "amounts … due and owing." Doc. No. 8, p. 20. However, in *Katz*, the Court explained that the "test for claim splitting is […] whether the first suit . . . would preclude the second suit." 655 F.3d at 1218. Thus, until a second suit is pending, dismissing Goodwill's suit on claim splitting grounds is inappropriate.

In conclusion, Goodwill's claim is, as a matter of law, not covered by the Policy with PIIC because Goodwill did not suffer a direct physical loss. Furthermore, even if it did suffer a direct physical loss, the plain meaning of the Virus Endorsement expressly excludes Goodwill's claim from coverage. Therefore, Goodwill is not entitled to relief and PIIC's motion to dismiss is GRANTED in its entirety.

**IT IS SO ORDERED** on this 9th day of November 2020.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE